Case number 20-3815, Fawzi Zaya v. Merrick Garland, oral argument not to exceed 15 minutes per side. Ms. Driver for the petitioner. Ms. Driver, I believe you're on mute. Oh, thank you. Sorry. No problem. If it pleases the court. I'm here representing Fawzi Zaya, who's the petitioner, who's asking this court for the right to be able to make his case that he deserves relief under the Convention Against Torture from being sent back to Iraq, where he, as a Chaldean Christian, will be subjected to potential genocide and the loss of life. This case is about whether or not Mr. Zaya satisfied the criteria that is needed to prove that he has a reasonable belief that he will be tortured if he is sent back to Iraq. And this court has understood through, I think, the years of cases that it has heard around people from Iraq, who are facing potential deportation to Iraq, that if you're a Chaldean Christian, that that may be sufficient to, in and of itself, show that you are facing a particularized threat, such that there isn't anything else that really needs to be considered beyond that fact. And there's a case that this court decided in 2020, Marcus v. Barr, where the court says, although the evidence of torture of Chaldean Christians is sufficient to show a particularized threat, in other words, that in and of itself is enough to at least, what he's asking for, is just at least to give him the opportunity to make his case before an immigration court. That, and in a prior case, in Yousef v. Lynch, which was a 2015 case, the government conceded that it was. But Ms. Dreiber, that in Yousef, it's true that in Yousef we had some pretty broad language, but later in an unpublished opinion, Eshock, that it then gets repeated in Marcus. We that's not good for all time, right? So the question I have is, I'm going to call this the reasonable fear hearing, that's like stage one. And then I don't have a name for the formal hearing, so I'm going to call it stage two. But that's the more adversarial hearing before an IJ, stage two. So to get past stage one, have you represented a lot of aliens in these reasonable fear stage one determinations? What I can't figure out is what kinds of evidence is normally required. It seems to me that here, the thing that the government says is lacking is that your client didn't introduce country reports. Obviously, there were no live witnesses. Is that the kind of thing that is normally expected? Because the regulations say you may introduce evidence, doesn't say you must. But how do people normally get past stage one? Because cases don't really help us. Thank you. Yeah. So in my experience, it's never been necessary to introduce evidence at this stage. In particular, if you're dealing with a hearing officer, an immigration judge that is familiar with the country conditions that are presented through the case. And that it's if the person who is claiming, as Mr. Zia was found to be, is credible, and there is familiarity with the country conditions of that country. And I think the judge himself says in the transcript, that I am aware that over the last couple of That is true, because the Detroit Immigration Court has probably heard more cases in regards to people seeking protection who are from Iraq. So the judge is familiar with this. And, and I raised the issue around Marquez, not because, because I'm trying to claim that there is a blanket, you know, pass for people who are Caldean, that that's sufficient in and of itself. But in Marquez, this court decides that it is necessary to remand that case back to the BIA, because the BIA did not consider 2017 information that was provided to it in making a determination about whether Marcus would qualify for cat or for asylum or for withholding. Right. But, but, but Miss driver, you didn't introduce any 2017 country reports. So that seems to be the government's position that, sure, maybe your case would look different if you had introduced country reports or had a witness, and that that is required at this stage. And what do you say to that? Well, I say I disagree with the guy. I because the law itself says that the both the initial person who does the interview, the asylum officer and the judge bring to bear their familiarity about the conditions in that country. Okay, but this asylum officer, obviously, your argument is that he didn't he referred to your client as a Calvin. And I don't know of great persecution of Presbyterians in Iraq. So I assume that he didn't know he didn't understand the Caldean community in the Detroit area. But then why wasn't it your job to educate him? Um, I think, Your Honor, if I had had any inkling if I had ever had a case in all of the cases that have come before me in which there's been a question of reasonable fear, in which it was necessary to do that, then I certainly would have done that. That has never been my experience. In the first time I've been in a situation in which there's been a denial of reasonable fear, when the person who is asking for relief is found to be credible, there's no question about whether or not he's Caldean. And I think it's fair to say that this court that the calling stage two to give somebody cat relief, but that it's a fluid situation, and that there is a constant nest necessity to look at the most recent data and the most recent enactments of legislation and case law to make a determination about whether or not somebody who is Caldean can actually be granted cat or not. And this stage is just to get him in the door, just to give him the opportunity to present that evidence. And he refers... Ms. Driver, let me ask you another question. So you represented this WH whose case you attached. What evidence did you have to present to get him past stage one? Yeah, so he never had to get past stage one. He had to prove that it was warranted for his case to be reopened. So in order to submit the petition for reopening, surely you had to attach, you had to make some kind of showing at that stage or no? No. And I can say why, Judge, because it's very unusual to have to get through this reasonable fear interview. And the reason that somebody has to get through that is because they receive a final order of deportation that's an expedited order, which my client received while he was in prison. And because it's an expedited order, he has this extra hurdle that he has to cross, which is to show that he has a right to go before the court. Since 2017, I've represented about 60 people from Iraq in front of the Detroit Immigration Court, which has had one of three judges hearing this case, including the judge who heard this case. And they are fully familiar with the landscape of what ought to at least provide you with the basis to get a hearing. He's not arguing, and I'm not arguing, that what we presented would be sufficient for him to prevail in an immigration hearing. But I do think that under these circumstances, where there is a presumption that the person who is doing the interview would know something about country conditions, which he obviously doesn't. And in fact, this hearing office, the officer who took the original statement, ignores the fact that in 2018, President Trump signed a law that says that it's called the Iraq and Syria Act to release... Mr. Driver, I see that your time is almost up, and I have a technical question I want to ask before it expires, if I might. As I understand it, the reasonable fear determination is not supposed to take into account any kind of categorical exclusion from the particular type of relief. Is that right? That is correct. Right. So in this case, the IJ did look at the preclusions based on his criminal history, correct? Correct. All right. So you could argue that, therefore, the decision not to grant a reasonable fear determination with respect to, not with respect to the cat, but with respect to persecution was improper. But I take it that's not your argument because you're not arguing for that kind of relief. Is that correct? That is part of our argument, Judge. And I'm having trouble seeing the nature of that argument. I can understand the argument, but it doesn't seem to get you anywhere since you're not asking for cat relief. I'm sorry, non-cat relief. Yeah. I mean, I think the IJ says early on in the transcript that he would not have called this a reasonable fear interview if he had been the agent that was conducting the interview immediately because it did preclude looking at other forms of relief. And there are other forms. I'm trying to get at what you're arguing here. Are you making an argument based on fact that he should have taken, he should not have taken his crimes into account in making the fear determination with respect to relief other than cat? Yes. And I'll tell you, I don't understand that argument, then you have to make it clear because you're not asking for relief other than cat. Not at this stage, Judge, but he would have but at this stage is what we're reviewing. And at this stage, I don't see how you could say, well, he made a mistake when he did that, but I don't see how it supports your convention against torture argument, which is your argument. Do you see my problem? I do, Judge. And I'm sorry, I know my time is up. Can I just try to give you an answer to the question? Please. Yeah. So in many of these cases, people are able to apply for other forms of relief that are completely outside of cat or asylum. There are forms of relief that are asking the court on the basis of the person being married to a US citizen. I thought those were not before us in this case. They're not, you have to go. This is an argument that you're sort of laying the groundwork to make in another case or at another stage. I'm saying that you have to get that through that door to be able to make those arguments. And if he was allowed through that door, which he had the right to be in front of an immigration court, he could have made those additional arguments and looking at criminal record was completely inappropriate, because it's not valid in terms of cat relief, or the other kinds of relief that he might be able to see. Thank you. Thank you. Miss driver. I believe you've reserved some time for rebuttal. So we'll continue questioning that. Mr. staff. Thank you. Good morning, Your Honor may please the court. Just very briefly, I understand the aspects of the case, but I would like to reiterate there is the government's position with respect to the standard of review. The government believes that the officially legitimate and bona fide reason as the appropriate standard and these reasonable fear denials, as opposed to substantial evidence standard. Of course, the government believes that substantial evidence also supports the denial of the affirmance of the negative fear finding in this case, but the reason expressed in our, in our, in our brief, we believe that the officially legitimate bona fide reason is more appropriate here. Miss driver certainly has not made the objection to it filing a reply brief or interrupting statements. We understand that the third circuit, the ninth circuit have gone the other way. And with all due respect to those courts, I mean, the essence of their reasoning was that the, the, the merits and the reason before your determination inquiries are close enough. Therefore, substantial evidence should apply to both. But as we explained in our brief, we think that the, the attorney general has set forth very that they treat the reasonable fair process is different. And our position is it should be considered different with respect to the standard of view as well. Go ahead. I just wanted to ask you, this seems to be a very unusual situation where at least according to your opposing counsel, where we didn't proceed, that the proceedings didn't go on to stage two. So how, how, how common is this, that this occurs, that there's a determination of no showing a reasonable fear sufficient to go forward with a, with a hearing? Judge Bush, I don't have numbers. I know this happens for whatever reason, quite frequently in the U.S. Court of Appeals for the ninth circuit. We cite several decisions from the ninth circuit rejecting very similar due process arguments that petitioner makes here. I don't recall seeing one coming out of the sixth circuit, but again, my focus in this particular case was trying to focus on the cases involving called the Christians. So, I mean, it certainly does happen, but, and I would, I would generally concede that the burden to get over the reasonable fear is not particularly difficult, but I would respectfully submit that it requires some sort of evidence beyond a fair assertion that I think I'm going to be tortured if I returned to my country of removal. Even, I mean, I would agree with Judge Larson's point that the case law does not actually specify precisely how much, but at least has to be something. And even if it is, I mean, something, there was something presented here. The petitioner here acknowledged, as the court knows, one of the elements for showing cat relief is that the government is acquiescing to torture that occurs in the country of removal. In this case, the immigration judge asked the petitioner if he was aware that the Iraqi government was in fact battling ISIS, which is the source of this genocide that President Trump was referring to. And he acknowledged, yes, I do know that the Iraqi government is battling ISIS and has in fact made advances. I mean, that by itself is enough to show that there is no acquiescence. And without acquiescence, you can't show a claim for cat protection. So is that the fatal flaw in his case, that the IJ asked him whether ISIS is, I mean, I don't know, defeated or that they're being controlled? And he said yes. Or is it that he failed to introduce country reports? What is it that made him not get over the hurdle? What should he have done? Well, I mean, I would agree, again, fully acknowledging that this court, I'm not sure any other courts define exactly what evidence needs to be set forth. I would submit you have to submit something. And even if, I mean, he did submit evidence, there is in this particular case, there is the acquiescence element that would necessarily defeat any potential cat claim. And therefore, like holding a stage two hearing, which is a good way of putting it, probably would have been a complete waste of time, would have ended up being a denial of a cat. How can it be a complete waste? This is what I don't understand. How can it be a complete waste of time when other Chaldean Christians, tons of them have gotten past stage one in our court? We know that because they have the full hearing that then gets to the BIA and then gets to our court on remand from the BIA. So somehow they got through stage one. We know that WH, although he didn't have to get through stage one, got relief from the IJ. And as far as I can tell, WH is identically situated to Mr. Zia. So I'm just having trouble figuring out why Mr. Zia, like maybe what you're going to say is Mr. Zia needed to submit a country report. They're available on the internet. Everybody else did. He didn't. Okay. But I don't have, you haven't told me that. And before you answer, I'll also ask you about, if you're familiar with, because it's related, this case that came down from the Ninth Circuit last, just last week, Alvarado Herrera versus Garland, which says you can't ask for country reports. And the Ninth Circuit said, that's not this kind of hearing. I did take a look at the Ninth Circuit decision just yesterday, Your Honor. I've not had a chance to talk to my superiors how we want to distinguish that. I would, we definitely respectfully disagree with the Ninth Circuit. We may even, our office may even be looking into pursuing rehearing. But even if, again, I mean, there's still the acquiescence element here. I mean, and I should also make clear, as we say in our brief, that the lack of medical care, she sees fears like he won't be able to receive treatment for his medical conditions. Courts have unanimously rejected that as a basis for cap relief. So I mean, and while counsel did allude to anti-American sentiment in a brief for this court, that theory was not presented to the immigration judge, at least not until after the judge had already denied relief. I ask a general question if it's, unless you, Judge Larson, would like further. I actually had another case that involved this kind of situation. It seems to be there are a lot in the general situation is it's a Chaldean Christian born or brought to the United States at a young age and has no connection with Iraq, but has committed crimes here and has not bothered or managed to become a citizen, which would have protected him, which presumably they could. So you is not based on ISIS anymore. It's based on this idea that when they first hit the country, they'll be tortured while they're interrogated by people who think that the United States is just dumping their criminals onto Iraq, either that or they're planting spies into Iraq. And there's two or three people who are testifying that this is what's likely to happen to them. I assume it's the same people that are testifying or providing statements over and over in these various cases. So that's sort of a standard pattern as I'm understanding it. And you can find it persuasive, you kind of, you can say you haven't shown it. What troubles me a little bit is if there are dozens and dozens of these cases, and they're really not very factually distinguishable. They may be distinguishable in their procedural posture, but they're, which is a little bit arcane. Does it make sense for us to rule case by case and have people who are functionally identical, practically identical, either persuasive or not, getting all kinds of different decisions? Well, I mean, I believe that's the nature of judicial review. I mean, every case needs to be decided on its own merits to the extent there's- Is the only difference that you've identified here is that it hasn't been ably brought by counsel? I mean, I would not put it in those way. I mean, it would have been, I believe it's possible you could have had a different result. Let me rephrase the question without being personal about it. Is the only difference a practical, a procedural one in terms of what procedural steps were gone through? Or is there something about this case which makes it different from all of these other cases? Or are all of the other cases losing ultimately? I don't know. If all these cases were losing or all of these cases were winning, I guess I'd feel more comfortable than if some of them are and some of them aren't, and it's on arcane procedural basis. You see what's sort of driving my question? I understand what you're saying. And I also say like in this particular case, I mean, the theories of the sources of potential torture that the petitioner in this case actually set forth, I mean, lack of medical care and genocide by ISIS, I mean, just are just not legally- Those aren't what counsel is arguing now. Well, I mean, there's also the exhaustion issue as well. So it's a technical difference then. So it's a procedural difference. Yes, I would say it is a procedural difference. You're not saying that this case might be distinguishable in its facts, in the extent to which torture is likely to happen. These cases are all pretty much, these cases involving that set of arguments are really indistinguishable from another except in their procedural status. I would agree that they all follow a general pattern. I did read the case your Honor may be referring to. I did not submit it to the court because it was an unpublished decision. I believe Judge Bush also authored an opinion a few weeks ago involving a Caldean Christian as well. And so, but I do acknowledge that the court has been getting quite a few of these cases. And so, and I mean, my understanding based on the history is that the Caldean Christians were largely successful in obtaining relief, not necessarily cat, but definitely asylum withholding, which is much lower standard up till 2015. And then after that, the Department of Homeland Security started submitting their own experts and in response to the USIP ruling. And after that, relief started getting denied. And I don't know if, I mean, Ms. Driver says she's had many, many cases. I have no doubt that's true. I can only assume that she's lost a few as well. But Mr. Stanton, I don't even understand your answer to Judge Rogers. Maybe I just didn't follow it. So he says, well, there's a procedural difference, but I don't, I still don't know what that is. Like what I don't understand that I can't get at because the cases aren't available to us is why do we see a lot of these cases? I'm not talking about whether this guy's going to win on the merits when he gets to stage two, maybe he'll lose. But what, what is he required to submit? What does the law require him to submit at stage one so he can get to stage two? And shouldn't we be worried that a lot of people who look facially indistinguishable, get to stage two and this person, Mr. Zia, didn't. And your brief calls that a tactic, like to say that like cases should be treated alike. I thought that was the rule of law. So I'm, please explain to me what he, what do you need to show at stage one? I can't figure it out. At a minimum, at a minimum, Judge Larson, you would need to show, I mean a viable cat theory that said, well, he claims that like he's going to die because he's not getting medical care. No, that doesn't count. Fine. Okay. All right. So the extent he's saying he's fearing torture from that genocide from ISIS, I mean, well, then we go to the acquiescence element. So, I mean, he's got like, so some, I mean. So what about this claim about the, the, what Judge Rogers just presented, which he did say, everybody in the county and community knows that you're not going to make it out of the airport because you're identifiable, that the people think you're a spy, you'll get tortured during your interrogation. By ISIS? No, I think it's by other government officials, not ISIS is his claim, or at least that's what I understood the claim to be. All right. Well, I mean, I mean, I would, I mean, I just don't know how Judge Rogers and Judge Bush's cases come back to the, they, they go to stage two, they go to the BIA, they come back, then our court sees them. I don't know how those cases got to stage two. And this one doesn't, unless you tell me, oh, I can tell, I can explain that to you. Those people submitted country reports, those people submitted affidavits, those people did these things that Mr. Zia didn't do. And then I'd say, oh, I see, that's the rule. But right now I don't see a rule. I just see Mr. Zia didn't get through and these guys did. And, you know, the information that the government hands out about the credible fear determination just says, be prepared to tell your story. Make sure you tell the truth. It doesn't say bring documents. It doesn't say bring country reports. I just, I'm concerned that like cases aren't being treated alike. And I'd like some comfort from you that that's not true. All right. Well, I mean, I probably should have known, I'm not positive whether or not the cases that Judge Rogers and Judge Bush had involved the expedited process. I mean, like this person was, petition was put in, he was given a final order, a final administrative order removed because of his criminal history. So it's certainly possible that the other people were put in stage two from the get-go because they had no such so that they were not issued, they were not put in expedited proceedings. So, I mean, with respect to, I mean, to what I believe is the core of your Honor's question, I mean, whether or not just saying, hey, I'll be tortured as soon as I get off the airplane. I mean, I mean, I just, yes, he was found credible, but I mean, that doesn't necessarily mean he's carried his burden of persuasion, however small it might be. So, I mean, I would respectfully submit that, I mean, you've got to show at least something to back it up. It's the same argument that was made in the case that's cited in the other side's brief, though, that's the argument that I'm seeing repeatedly made. It's not just, I'll be tortured the minute I get off the plane. Well, it is in general, but they give all these reasons why you'll be tortured when you, after you get off the plane. All right. And your time, your time has expired, but I think we went a little bit over with Ms. Driver. So, I think we're okay going a little over with you as well. And I have one question for you, just to clarify my mind. Is it the government's position that you could make the reasonable fear showing based upon just the testimony or interview of the non-immigrant or non-citizen here without any evidence? Is that possible in the government's view? It's certainly possible. Absolutely. The INA itself says that a case can be made based on credible testimony alone, but it's not, it's certainly not dispositive. I would agree that being credible certainly helps a non-citizen's case, but I think almost every court agrees that credible testimony does not always necessarily carry the day. But it could. It could. Sure. Sure. Sure. Sure. It could. Yes. There's case on that. Sure. Sure. It's in the statute. Yeah. Do the other judges have any further questions? Okay. Thank you, Mr. Stanton. Ms. Driver, do you have a rebuttal? Just first on the question of review, I think that it is a substantial evidence standard that this court has used in the past in making determinations in regards to cases. It's certainly what the Supreme Court stated and Nasrallah is the right standard to use, and so we would stand on that. I very much agree with the questions that are asked in terms of the nearly identical character of these cases and the various outcomes that have occurred. I can say in my experience, one of the things that has been determinative in terms of the outcome is what has evolved in the country from when the person received the final order to the actual moment, literally almost in the immigration court. I think in the last year, there've been a number of cases that I've had that were sent back to the immigration court from the BIA to be reheard based on country condition changes that occurred within the last year, and those cases have prevailed. There were definitely a number of cases early on, 2017, 2018, from this Iraqi community, all of which included people who had criminal convictions, every single one of them, and those cases did not always succeed. In fact, they rarely succeeded, but that has changed, and that's our point, is that once you establish that baseline, that you have these factors, which Judge Rogers, you're saying, are presented time and time again, then it really depends on what the current situation is in terms of your ability to prevail. To get to stage two, if you are giving credible testimony, which both the IJ and the agent found that my client was credible, and you're saying that these factors will affect you, in our opinion, that is enough to get to stage two. You don't have to prove more than the fact that there is a possibility that there is a reasonable chance that this will happen, and my client never claims, he says and the actions of the government, and I think that that's sufficient to get him a hearing. Ms. Driver, you're almost out of time, but I wanted to make sure to ask, at the end of your colloquy with the immigration judge, you asked permission to file a motion to reconsider, saying exactly this, country conditions change, I'd like to submit some evidence on that, and the judge says, well, I'm not going to discourage you from filing such a motion, but the Sixth Circuit isn't going to wait, so you better file your appeal. Did you file such a motion? I'm so sorry, Judge, for interrupting first. No, we did not. I think the judge was so emphatic that if we got to the Sixth Circuit, that that was our best chance of success, that we followed the judge's advice. I've never been in a case where usually when you're in these cases, they tell you what your timetable is for an appeal, but there isn't a judge urging you to take that course of action instead of a different course of action as there was in this case, and that seemed persuasive to me. Thank you, Ms. Driver, and thank you, Rajkund, your services today as well, so the case will be submitted.